## THE FRANK GILMORE.

### JENKINS et al. v. BUNTON et al.

(Circuit Court of Appeals, Third Circuit. January 9, 1899.)

COLLISION—LIABILITY OF TUG—NEGLIGENCE IN MAKING UP FLEET.

It being customary to make up tows at Pipetown, which is a half mile above the Smithfield Street Bridge on the Monongahela river, and to proceed down the river with their stern foremost until below the bridge, and then turn, a steamer cannot be charged with negligence in so proceeding, without first ascertaining the condition of the river below the bridge; and where, by reason of its obstruction there by boats, it was impossible to turn the fleet, and the steamer then continued on down the river without turning, she cannot be held liable for a collision with a barge, occurring without any fault in her management, though it might have been avoided had she been moving head on.

Butler, District Judge, dissenting.

Appeal from the District Court of the United States for the Western District of Pennsylvania.

Edwin W. Smith, for appellants.

Carroll P. Davis, for appellees.

Before ACHESON and DALLAS, Circuit Judges, and BUTLER, District Judge.

DALLAS, Circuit Judge. On the morning of May 20, 1893, the Frank Gilmore made up a tow of several barges and flatboats at Pipe-

town, which is about half a mile above the Smithfield Street Bridge, on the Monongahela river. She took this tow down the river, stern foremost. This the court below held to be, under the circumstances, negligent navigation; and upon this finding of initial fault, as we understand the opinion, the learned judge founded his decision.

It must be conceded that, if the condition of affairs immediately below the Smithfield Street Bridge had been known to those in charge of the Gilmore before she left Pipetown, she should not have proceeded as she did. But it was not then known to them that the river was at that point so obstructed by boats that it would not be possible to turn there, as had been contemplated, and we are unable to agree that it was incumbent upon them to ascertain this fact before starting. The movement of such tows forms a very considerable and important part of the traffic of the Monongahela and Ohio rivers, and, so far as the evidence shows, it has never been supposed by those who are engaged in it that before leaving their moorings, at a half mile above the Smithfield Street Bridge, they should inform themselves of the number and situation of the craft which may be lying or in motion immediately below it; and we do not think we would be justified in now laying down a rule requiring them to do so. It is not unusual to start stern foremost, and the point at which it was intended to turn was the customary one. It was, however, found to be impossible in this instance to carry out this intention; and the Gilmore, with her tow, proceeded as originally made up, until the swift current of the Allegheny was encountered. There she was unable to turn. She struck two barges which were lying at the upper end of the Maramet abutment. Her engine was disabled. She became unmanageable, and drifted with her fleet against the libelant's barge, and sunk it. If she had been head on, the accident might not have happened; but, being stern foremost, it does not appear that she could have done anything which she did not do, to avert it. In short, we are of opinion that, unless she should be charged with constructive notice that it would not be possible for her to execute the usual maneuver immediately below the bridge,—and we have already said she should not be,—there is no fault disclosed by the evidence which contributed to the collision, and which can be justly ascribed to the Gilmore. Therefore the decree of the district court must be reversed, and the cause will be remanded to that court, with direction to enter a decree dismissing the libel, with costs.

BUTLER, District Judge. I dissent on the ground that the district judge's findings of fact are justified by the proofs; and with such findings the decree of the district court is right and should be affirmed.